| | |
|---|---|
| District Court, City and County of Denver, Colorado<br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80202<br><br>**Plaintiff(s):**<br><br>**TISHA LEE,**<br><br>v.<br><br>**Defendant(s):**<br><br>**DENVER PUBLIC SCHOOLS; and**<br>**DAVID SUPPES, in his individual and official capacities..** | DATE FILED: June 17, 2020 3:34 PM<br>FILING ID: 56625882B2875<br>CASE NUMBER: 2020CV32069<br><br><br><br><br><br>▲ COURT USE ONLY ▲ |
| <u>Counsel for Plaintiff</u>:<br>Darold Killmer, #16056<br>Reid Allison, #52754<br>1543 Champa Street Suite 400<br>Denver, CO 80202<br>Phone: (303) 571-1000<br>Fax.: (303) 571-1001<br>Email:   dkillmer@kln-law.com<br>             rallison@kln-law.com | Case Number:<br><br><br><br><br>Division          Courtroom |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, Tisha Lee, by and through her attorneys, Darold Killmer and Reid Allison of KILLMER, LANE & NEWMAN, LLP, herby files her Complaint and Jury Demand against Defendants Denver Public Schools ("DPS") and David Suppes, and respectfully alleges as follows:

## I.     INTRODUCTION

1.     Plaintiff Tisha Lee, an African American woman, is a highly qualified Vice President of Student Services at Emily Griffith Technical College ("EGTC"), a technical college

**EXHIBIT A**

affiliated with DPS. Ms. Lee has been an exceptional servant of EGTC for fourteen years and has twenty-seven years of experience working in higher education.

2. In early 2019, when the position of Executive Director of EGTC became open, Ms. Lee applied. After an elaborate and multi-pronged interview process, Ms. Lee was ranked as one of the top two candidates.

3. Even so, DPS and its Chief Operating Officer ("COO") Defendant David Suppes hired as Executive Director a substantially less-qualified white woman—Stephanie Donner—who had been ranked lower than Ms. Lee after the extensive interview process.

4. When Ms. Lee filed a charge of race discrimination with the Colorado Civil Rights Division ("CCRD"), Defendants retaliated against her by firing the principal witness to her charge of discrimination.

5. DPS's discriminatory failure to promote Ms. Lee because of her race, as well as its retaliation against her for filing a charge of race discrimination, violated the Colorado Anti-Discrimination Act ("CADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. §§ 1981 and 1983, and caused Ms. Lee to suffer substantial injuries, damages, and losses.

## II.     PARTIES

6. Plaintiff Tisha Lee is a resident of and domiciled in the State of Colorado. At all relevant times, Ms. Lee was a current employee of Defendant Denver Public Schools.

7. Ms. Lee is an African American woman and thus a member of the classes of persons protected by Title VII, Section 1981 and 1983, and CADA at all relevant times.

8. Defendant Denver Public Schools is a public school district in Denver, Colorado with its principal office at 1860 Lincoln Street, Denver, CO 80203. Defendant Denver Public

Schools has continuously been an employer within the meaning of Title VII and CADA at all times relevant to this Complaint.

9. Defendant David Suppes is a resident of and domiciled in the State of Colorado. At all relevant times, Mr. Suppes was employed by DPS. As its Chief Operating Officer, Mr. Suppes was the final decisionmaker who failed to promote Ms. Lee based on her race.

### III. JURISDICTION AND VENUE

10. Jurisdiction of this Court is invoked pursuant to Colorado Revised Statutes § 13-1-124(1)(a). At all times relevant to this Complaint, Defendant's principal place of business was in Colorado, and Defendant conducted continuous and systematic activities of a general business nature in Colorado.

11. Venue is proper in the District Court for the City and County of Denver pursuant to Colo. R. Civ. P. 98(c)(1). Defendant has its principal place of business in the City and County of Denver. The amount in controversy exceeds the jurisdiction of County Court.

### IV. ADMINISTRATIVE PREREQUISITES

12. Plaintiff timely filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and has received her Notice of Right to Sue on her claim of failure to promote.[1]  Thus, all administrative prerequisites have been or will soon be met.

---

[1] Ms. Lee filed her retaliation Charge with the CCRD after the retaliatory conduct, described herein, occurred.  Upon receipt of her notice of right to sue on that charge, all administrative prerequisites will have been met.  For the sake of judicial efficiency, and to place defendants upon clear notice of the scope of this action, the factual and legal support for the retaliation claim are set forth herein.  If necessary, the retaliation claim could be stayed while the administrative Notice of Right to Sue is obtained, though the issue will shortly take care of itself in due course.

V.     **STATEMENT OF FACTS**

*Ms. Lee is an exceptional employee for DPS.*

13.    Ms. Lee has worked at EGTC for over fourteen years.

14.    Because of her exceptional work, Ms. Lee has earned multiple promotions.

15.    In her current position as Vice President of Student Services, she oversees eleven departments and supervises twenty-five employees.

16.    Ms. Lee is the only person of color on EGTC's leadership team. She has well-established professional relationships with many significant community stakeholders, including Denver Mayor Michael Hancock and several legislators, and she has always had a good working relationship with EGTC's political lobbyist.

17.    Ms. Lee has consistently earned excellent performance evaluations, especially noting her impressive people management skills.

18.    Ms. Lee's work was so exemplary that when her boss, former Executive Director ("ED") Jeff Barratt, retired in early 2019, he strongly encouraged Ms. Lee to apply for the ED position.

19.    With Mr. Barratt's encouragement, Ms. Lee applied for the vacant position, though she knew that in EGTC's 103-year history no person of color had ever been ED.

20.    Ms. Lee is so steeped in the needs of EGTC and its students, as well as what the position of ED requires, that she helped draft the job description for the ED position. Importantly, this description included a requirement of at least seven years of experience in higher education.

### *DPS undertook an exhaustive interview process, after which Ms. Lee was one of the top two candidates.*

21. DPS established a two-panel interview process, designed to select the two best candidates as finalists.

22. Barbara Lindsay, one of EGTC's other four directors on the leadership team, was integrally involved in modifying the ED job description to stress *higher* education experience. She also helped to thoughtfully select stakeholders to take part as interview panelists.

23. Ms. Lindsay, along with the Acting ED and EGTC's Recruiting Coordinator, reviewed resumes to determine who should be interviewed. They agreed that Stephanie Donner, a white woman from outside EGTC, should not be interviewed because she lacked sufficient higher education experience.

24. Ms. Lee was selected as one of the candidates to be interviewed. She interviewed with the first panel and was selected to proceed to the second panel interview.

25. At the second panel interview, panelists were provided with a matrix of objective criteria on which to rank the candidates—including such areas as leadership, external partnerships, and collaboration.

26. The candidates were asked a list of standardized questions to determine their skills and abilities in each of these objective fields.

27. After the interviews were conducted, there was clear consensus among the panelists that Ms. Lee was one of the top two candidates.

28. The panel particularly praised Ms. Lee's profound and well-earned understanding of EGTC and its needs, as well as her substantial connections in the community.

5

29. No panelist ranked Stephanie Donner in either of the top two positions. In fact, five of the six panelists ranked her last.

30. During the panel discussion, racist stereotypes and statements were levied against and about Ms. Lee. First, one of the panelists questioned Ms. Lee's fundraising ability. Ms. Lee had, in fact, helped raise over $150,000 for EGTC's Foundation. The panelist doubted this figure and Ms. Lee's abilities, because of her race, stereotypically believing that Ms. Lee could not be connected to people affluent enough to donate substantial sums.

31. Similarly, this panelist stated that Ms. Lee must be held to a higher standard because she is a Black woman. Another panelist stated that she understood this position.

32. Ms. Lindsay was also a panelist and strenuously objected to these racist lines of discussion and evaluation. Despite Ms. Lindsay's justified objection, nothing was done to correct this line of thinking or the application of these racially discriminatory criteria by at least some of the panel members.

### ***DPS and Defendant Suppes failed to promote Ms. Lee because of her race.***

33. On April 22, 2019, Ms. Lee learned that she would not be promoted to the position of Executive Director.

34. Ms. Lee had been informed informed that in spite of initially being actually scheduled to participate in the final panel interview, she now was being taken off of that schedule, and would be denied her earned opportunity to compete head to head with the other finalist for the ED position.

35. Ms. Lindsay informed Ms. Lee that she had been one of the top two candidates for the position and told her about the racist comments made during the panel's

discussion.

36. Ms. Lee then filed a charge of race discrimination with the CCRD, based substantially on the information Ms. Lindsay had provided her.

37. Ultimately, Defendants DPS and Suppes hired Stephanie Donner, a less qualified white woman, to be the new ED.

38. This decision was made even though the panel nearly unanimously viewed her as the worst of the candidates interviewed, and in any event not ranked within the top two.

39. Specifically, the panel was rightly concerned with Ms. Donner's very limited higher education experience. Moreover, Ms. Donner did not discuss instruction, training, or teaching in her interview, and she has no substantial experience in those areas of fundamental importance to EGTC.

40. Defendants DPS and Suppes purported to hire Ms. Donner based on her political connections, despite her lack of the minimum experience in higher education required for the position.

41. Such a position ignored Ms. Lee's substantially more higher education experience, as well as her comparable and significant "political connections," including good relationships with Denver Mayor Michael Hancock and several legislators. More fundamentally, the standardized interview questions did not include inquiry into a candidate's political connections and that was not a criterion on which the candidates were objectively judged.

42. Defendants' discrimination against Ms. Lee was intentional discrimination,

although it may have been wholly or in part a product of implicit racial bias, resulting from or reflecting attitudes and stereotypes that affect actions and decisions even if sometimes in an unconscious way. Such racial discrimination is prohibited by the state and federal anti-discrimination statutes being enforced by this action.

### *Defendants DPS and Donner retaliated against Ms. Lee for filing a charge of discrimination.*

43. After Ms. Lee filed her charge of discrimination in the CCRD based on Ms. Lindsay's information, Defendants began retaliating against her.

44. Immediately after Ms. Donner assumed the role of ED in June 2019, she began mistreating Ms. Lindsay.

45. In an effort to undermine Ms. Lee's charge of discrimination by impugning the credibility, competence or performance of one of her major witnesses, Ms. Donner fired Ms. Lindsay at the end of July 2019, approximately two weeks after Ms. Lee had filed her CCRD charge using Ms. Lindsay's information.

46. Ms. Lindsay filed her own CCRD charge of discriminatory retaliation, relating to her firing. In June 2020, the CCRD issued a reasonable cause finding on Ms. Lindsay's charge, concluding that she had been fired for objecting to the racist comment made during the panel discussion after Ms. Lee's interview.

47. As a result of Defendants' unlawful, discriminatory conduct, Ms. Lee has suffered and will continue to suffer substantial injuries, damages and losses.

48. Because Defendants discriminated against Ms. Lee based on her race, she has claims of discrimination and retaliation under Title VII, 42 U.S.C. §§ 1981 and 1983, and CADA.

## VI. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983—Violation of the Fourteenth Amendment's Equal Protection Clause**
**(Against Defendants DPS and Suppes)**

49. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

50. Ms. Lee is an African American woman.

51. Defendants were acting under color of state law in their actions and inactions at all relevant times.

52. Defendants failed to promote her based on her race and retaliated against her for filing a CCRD charge of race discrimination.

53. Defendants had no compelling governmental interest in discriminating against Ms. Lee on the basis of her race or retaliating against her.

54. As a direct and proximate result of Defendants' discriminatory treatment, Ms. Lee has suffered and continues to suffer significant injuries, damages, and losses.

55. Defendants acts and omissions were taken pursuant to the customs, practices, and policies of DPS.

56. Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard for Ms. Lee's constitutional rights.

57. Defendants' conduct violated clearly established rights belonging to Ms. Lee of which any reasonable person in Defendants' position would have known.

## SECOND CLAIM FOR RELIEF

### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.
### Race Discrimination
### (Against Defendant DPS)

58. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

59. As an African American, Ms. Lee is a member of a protected class under Title VII.

60. At all pertinent times, Ms. Lee performed the functions of her job exceptionally and was qualified for her position and for the position for which she was applying, Executive Director.

61. Ms. Lee suffered an adverse employment action when Defendant failed to promote her to the position of Executive Director.

62. Ms. Lee was qualified for the position of Executive Director and was one of the two highest ranked candidates after an extensive hiring process. The white woman who was hired as ED was ranked below her and was less qualified than Ms. Lee.

63. Defendant subjected Ms. Lee to adverse treatment in the terms and conditions of her employment because of her race, including but not limited to failure to promote her.

64. Defendant intended to discriminate against Ms. Lee because of her race in deciding to promote a less qualified white woman rather than her.

65. Defendant treated Ms. Lee less favorably than her similarly situated white counterparts, and in particular, Ms. Donner.

66. Defendant failed to promote Ms. Lee because of her race. Ms. Lee's race was a motivating factor in Defendant's failure to promote her.

67. Defendant's *post hoc* asserted non-discriminatory reasons for not promoting Ms. Lee were mere pretext for illegal discrimination and did not actually motivate the decision to select Ms. Donner for promotion instead of her.

68. Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its agents, discriminated against Ms. Lee on the basis of her race, and directly and proximately caused her injuries, damages, and losses.

69. Defendant's discriminatory and unlawful acts and conduct were committed with malice or with reckless indifference to Ms. Lee's federally protected rights within the meaning of Title VII.

## THIRD CLAIM FOR RELIEF

**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*
Retaliation
(Against Defendant DPS)**

70. Plaintiff hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

71. Ms. Lee has been at all times been qualified to perform her job responsibilities and has met or exceeded expectations

72. Ms. Lee believed in good faith that Defendant discriminated against her on the basis of her race.

73. Ms. Lee opposed Defendant's discriminatory treatment by filing a charge of race discrimination with the CCRD.

74. As a direct result of Ms. Lee's opposition to activities prohibited by Title VII, and her participation in proceedings governed by Title VII (i.e., the filing of her charge of discrimination), Defendant subjected Ms. Lee to materially adverse treatment, including but not limited to firing the principal witness to her charge of discrimination, in order to undermine her charge, subjecting her to disparate treatment, terminating her, and other practices.

75. Defendant's retaliation against Ms. Lee arose out of, was caused by, and was like and related to the discrimination Ms. Lee opposed.

76. Defendant treated Ms. Lee more adversely than her similarly situated counterparts who did not voice their opposition to Defendant's discrimination.

77. Defendant's *post hoc* asserted non-discriminatory reasons for failing to promote her and firing a fundamental witness to her race discrimination charge were pretext for illegal retaliation and did not actually motivate Defendant's actions.

78. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Ms. Lee and directly and proximately caused her injuries, damages, and losses.

79. Defendant's conduct was engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff within the meaning of Title VII.

## FOURTH CLAIM FOR RELIEF

### Discrimination under 42 U.S.C. §§ 1981 and 1983
### (Against Defendants DPS and Suppes)

80. Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

81. Title 42 U.S.C. § 1983 ("Section 1983") is the jurisdictional vehicle appropriate to obtain relief against a state actor for a violation of federally protected rights, including those embodied in Title 42 U.S.C. § 1981 ("Section 1981").

82. Section 1981 provides, in pertinent part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . .
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.
> (c) The rights protected by this section are protected against . . . impairment under color of State law.

83. At all relevant times, Ms. Lee was an employee of DPS and candidate for the position of ED.

84. This employment relationship, as well as her candidacy for the promotion to ED, encompasses sufficient contractual rights to support a section 1981 claims for discriminatory failure to promote.

85. Defendants DPS and Suppes discriminatorily failed to "make and enforce" the contractual relationship inherent in a promotion to the Executive Director position, violating the strictures of § 1981.

86. Ms. Lee is African American and thus a member of a protected class under section 1981.

87. At all relevant times, Ms. Lee was qualified to perform her job responsibilities, and she performed her job responsibilities satisfactorily at all times.

13

88. Defendant denied Ms. Lee the protections provided by §1981 in the terms and conditions of her employment by failing to promote her because of her race.

89. Ms. Lee's race was a motivating factor in Defendants' decision not to promote her to the position of Executive Direct, though she was a better qualified candidate to the white woman Defendants hired.

90. Defendant DPS engaged in race discrimination against Ms. Lee pursuant to its custom, policy, or practice of promoting and otherwise treating more favorably white employees as compared to non-white employees.

91. Defendants' conduct was willful, wanton and in reckless disregard of Ms. Lee's federally protected rights and was the proximate and but-for cause of significant injuries, damages and losses that she incurred.

### FIFTH CLAIM FOR RELIEF

### Retaliation under 42 U.S.C. §§ 1981 and 1983
### (Against Defendant DPS)

92. Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

93. Title 42 U.S.C. § 1983 ("Section 1983") is the jurisdictional vehicle appropriate to obtain relief against a state actor for a violation of Title 42 U.S.C. § 1981 ("Section 1981").

94. Ms. Lee engaged in activities and speech in opposition to employment practices prohibited by section 1981 by objecting to racial discrimination and filing a charge of race discrimination with the CCRD.

95. Defendant treated Ms. Lee more adversely than her similarly situated counterparts who did not voice their opposition to Defendants' discrimination.

96. Because of Ms. Lee's objections to race discrimination, Defendants subjected her to materially adverse treatment, including but not limited to Ms. Donner firing the principal witness in support of Ms. Lee's charge of race discrimination, in order to undermine her claim, subjecting her to disparate treatment, and other discriminatory practices.

97. Defendants' retaliation against Ms. Lee arose out of, was caused by, and was like and related to the race discrimination Ms. Lee opposed.

98. Defendants' conduct was engaged in with malice or with reckless indifference to Ms. Lee's federally protected rights within the meaning of section 1981.

99. Defendants' retaliation against Ms. Lee was the direct and proximate cause of injuries, damages, and losses.

### SIXTH CLAIM FOR RELIEF

**Colorado Anti-Discrimination Act, C.R.S. § 24-34-301 *et seq*.**
**Race Discrimination**
**(Against Defendant DPS)**

100. Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

101. Ms. Lee is an African American woman and is thus a member of multiple protected classes under the Colorado Anti-Discrimination Act ("CADA").

102. Defendant treated Ms. Lee less favorably than her similarly situated white counterparts.

103. Ms. Lee was subjected to adverse treatment in the terms and conditions of her employment because of her race, including but not limited to failure to promote her and discriminatory terms and conditions of employment, as detailed herein.

15

104. Ms. Lee has been at all times qualified to perform her job responsibilities and has met or exceeded expectations.

105. Defendant failed to promote Ms. Lee because of her race.

106. Defendant's *post hoc* asserted non-discriminatory reasons for failing to promote Ms. Lee were pretext for illegal discrimination and did not actually motivate DPS's decision.

107. Ms. Lee's race was the motivating factor in Defendant's failure to promote her to the position of Executive Director.

108. Defendant's acts and conduct were committed with malice or with reckless indifference to the protected rights of Ms. Lee within the meaning of CADA.

109. Defendant (by and through the conduct of its agents and employees) intentionally discriminated against Ms. Lee on the basis of her race.

110. Defendant is liable for the intentional acts and omissions of its agents and employees.

111. As a consequence of Defendant's illegal conduct, Ms. Lee has sustained injuries, damages, and losses.

## SEVENTH CLAIM FOR RELIEF

### Colorado Anti-Discrimination Act, C.R.S. § 24-42-301, *et seq*.
### Retaliation
### (Against Defendant DPS)

112. Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

113. Ms. Lee has been at all times been qualified to perform her job responsibilities and has met or exceeded expectations.

16

114. Defendant discriminated against Ms. Lee on the basis of her race, as described herein.

115. Ms. Lee opposed the discrimination and filed a charge with the CCRD.

116. As a direct result of Ms. Lee's opposition to activities prohibited by CADA, Defendant retaliated against Ms. Lee.

117. Defendant treated Ms. Lee more adversely than her similarly situated counterparts who did not voice their opposition to Defendant's discrimination.

118. Defendant's retaliation against Ms. Lee arose out of, was caused by, and was like and related to the discrimination Ms. Lee opposed while she was employed.

119. Defendant's retaliation included, but was not limited to, subjecting Ms. Lee to heightened scrutiny, firing her principal witness to her charge of discrimination, subjecting her to more adverse terms or conditions of employment than her counterparts who did not express their opposition to discrimination, and other retaliatory conduct.

120. Defendant is liable for the acts and omissions of its agents and employees.

121. Defendant's conduct was the proximate cause of Ms. Lee's injuries, damages, and losses.

122. Defendant's conduct was engaged in with malice and with reckless indifference to the protected rights of Ms. Lee within the meaning of CADA.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, in an amount to be determined by a jury following a trial, and award her all relief allowed by law and equity, including, but not limited to, the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages, including, but not limited to, front pay and back pay damages, as established at trial;

c. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial[2];

e. Pre-judgment and post-judgment interest at the highest lawful rate;

f. Attorney's fees and costs; and

g. Such further relief as justice requires.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ISSUES SO TRIABLE.**

Respectfully submitted this 17th day of June 2020.

KILLMER LANE & NEWMAN, LLP

*s/ Darold W. Killmer*

_____

Darold Killmer #16056
Reid Allison #52754
1543 Champa Street, Ste. 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
dkillmer@kln-law.com
rallison@kln-law.com

*Counsel for Plaintiff*

---

[2] With respect to the state law claims to which the state statute applies, Plaintiff anticipates that she will seek to amend her pleadings to add a claim for exemplary damages pursuant to C.R.S. § 13-21-102, after disclosures have been exchanged and after she has established the existence of a triable issue of exemplary damages.

18

| District Court, City and County of Denver, Colorado<br><br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: June 17, 2020 3:34 PM<br>FILING ID: 56625882B2875<br>CASE NUMBER: 2020CV32069 |
|---|---|
| **Plaintiff(s):**<br><br>**TISHA LEE,**<br><br>v.<br><br>**Defendant(s):**<br><br>**DENVER PUBLIC SCHOOLS; and**<br><br>**DAVID SUPPES, in his individual and official capacities..** | ▲ COURT USE ONLY ▲ |
| Counsel for Plaintiff:<br>Darold Killmer, #16056<br>Reid Allison, #52754<br>1543 Champa Street Suite 400<br>Denver, CO 80202<br>Phone: (303) 571-1000<br>Fax.: (303) 571-1001<br>Email:   dkillmer@kln-law.com<br>           rallison@kln-law.com | Case Number:<br><br><br><br>Division          Courtroom |
| **DISTRICT COURT CIVIL CASE COVER SHEET** ||

This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

    ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Respectfully submitted this 17th day of June 2020.

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*

Darold W. Killmer #16056
Reid Allison #52754
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
dkillmer@kln-law.com
rallison@kln-law.com

*Counsel for Plaintiff*