**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1989-WJM-MEH

TISHA LEE,

    Plaintiff,

v.

DENVER PUBLIC SCHOOLS; and
DAVID SUPPES, in his individual and official capacity,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the Court on Defendants Denver Public Schools ("DPS") and David Suppes's Motion to Dismiss Plaintiff Tisha Lee's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 16) ("Motion"). For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

The following facts are taken from Lee's Complaint and are assumed true for the purpose of resolving the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Lee, an African-American woman, is Vice President of Student Affairs at Emily Griffith Technical College ("EGTC"), an affiliate of DPS. (ECF No. 4 ¶ 1.) She has served in that position for 14 years and has worked in the field of higher education for 27 years. (*Id.*)

In early 2019, the executive director ("ED") of EGTC announced his retirement. (*Id.* ¶ 18.) He encouraged Lee to apply for the vacant position. (*Id.*) Lee assisted in drafting the hiring criteria and job description for the position, which included a requirement of at least seven years of experience in higher education. (*Id.* ¶¶ 20–22.)

Lee applied for the ED position and completed two rounds of interviews. (*Id.* ¶¶ 20–25.) A panel of six interviewers conducted the interviews. (*Id.* ¶ 21.) David Suppes, the Chief Operating Officer of DPS, was to make the final selection of the ED from the panel's choice of two finalist candidates. (*Id.* ¶ 37.)

Lee was initially told that she was a finalist candidate and had been scheduled for a final interview. (*Id.* ¶ 34.) On April 22, 2019, however, Lee learned that her final interview had been cancelled, and she would no longer be considered for the ED position. (*Id.* ¶¶ 33–34.)

A colleague of Lee's, Barbara Lindsay, served on the interview panel. (*Id.* ¶ 35.) Lindsay informed Lee that she had been ranked as a finalist candidate for the position following her interviews. (*Id.*) Lindsay also told Lee that certain panelists made racially biased comments about Lee, such as doubting whether she had the necessary political connections to fundraise for the school and stating that she must be held to a higher standard as a Black woman. (*Id.* ¶¶ 30–31.)

DPS and Suppes ultimately hired a Caucasian woman named Stephanie Donner for the ED position. (*Id.* ¶ 37.) According to Lindsay, five of the six panelists ranked Donner as their last choice for the ED position due to her lack of experience in higher education. (*Id.* ¶¶ 38–39.) Moreover, no panelist had ranked Donner as a finalist for the ED position. (*Id.* ¶ 38.)

Based on the information Lindsay provided, Lee filed a charge of discrimination with the Colorado Civil Rights Division ("CCRD"). (*Id.* ¶ 36.) Two weeks after Lee filed her charge of discrimination with the CCRD, Donner terminated Lindsay's employment. (*Id.* ¶ 45.)

Lee filed her Complaint on June 17, 2020 in Colorado state court. (ECF No. 4.) She asserts a total of seven claims: (1) race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983, against DPS and Suppes, (2) race discrimination in violation of Title VII of the Civil Rights Act of 1964, §§ 2000e, *et seq.* ("Title VII"), against DPS, (3) retaliation in violation of Title VII against DPS, (4) race discrimination in violation of 42 U.S.C. § 1981 against DPS and Suppes, (5) retaliation in violation of § 1981 against DPS, (6) race discrimination in violation of the Colorado Anti-Discrimination Act, §§ 24-34-301, *et seq.* ("CADA"), against DPS, and (7) retaliation in violation of the CADA against DPS. (*Id.* ¶¶ 49–122.)

Defendants removed the action on July 8, 2020, based on Lee's federal claims brought pursuant to Title VII, § 1981, and § 1983. (ECF No. 1.) Defendants filed their Motion on July 29, 2020, seeking dismissal of Lee's Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 16 at 1.) Lee filed a response to the Motion, and Defendants filed a reply. (ECF Nos. 27 & 32.)

## II. LEGAL STANDARD

### A.   Rule 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not

3

a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.*

**B.     Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting

4

*Twombly*, 550 U.S. at 556).

### III. ANALYSIS

As a preliminary matter, the Court notes that Defendants seek dismissal of Lee's Title VII claims and CADA retaliation claim for failure to exhaust administrative remedies. (ECF No. 16 at 5.) In the time since this briefing, however, Lee has obtained right-to-sue notices from the EEOC on her Title VII claims (Claims 2 and 3), and Defendants have conceded that she has exhausted her administrative remedies as to those claims. (ECF No. 39 at 2.) Accordingly, Defendants' arguments as to Claims 2 and 3 for failure to exhaust are moot.

**A.    Title VII and CADA Discrimination Claims**

Defendants argue that Lee cannot state a claim for race discrimination under Title VII, and by extension, the CADA. (ECF No. 16 at 5–6; *see also Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1219 (10th Cir. 2003) ("Colorado has adopted the same standards applicable to Title VII cases when considering claims brought under the [CADA].").) They seek dismissal of Lee's Title VII and CADA claims (Claims 2 and 6). (ECF No. 16 at 5.)

To state a claim for disparate treatment for failure to hire, transfer or promote under Title VII or the CADA, a plaintiff must allege that "1) [she] is a member of a racial minority; 2) [she] applied and was qualified for an available position; 3) [she] was rejected despite those qualifications; and 4) the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

Defendants posit that the *Drake* test applies only to failure-to-promote cases, and

that in a failure-to-hire case, a plaintiff must also show that she "was rejected under circumstances which gave rise to an inference of unlawful discrimination in that [her] failure to be hired . . . is more likely than not based on considerations of impermissible factors." (ECF No. 16 at 5; *see also Coe v. Yellow Freight Sys.*, Inc., 646 F.2d 444, 448–49 (10th Cir. 1981).) Under this test, they contend, Lee cannot state a claim because her allegations do not give rise to an inference of discriminatory animus. (ECF No. 16 at 5.) Defendants do not dispute that Lee is a member of a protected class, and applied and was qualified for the position. (*Id.*)

Defendants' articulation of the relevant standard is misguided. The Tenth Circuit applies the four-factor *Drake* test to failure-to-hire claims in addition to failure-to-promote claims.[1] *See, e.g.*, *Drake*, 927 F.2d at 1159–60 (10th Cir. 1991). The satisfaction of the final two elements—that the plaintiff was rejected despite her qualifications and that the position was filled by an applicant who was not a member of the protected class—"creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). By alleging that she was rejected despite her qualifications and that the position was filled by a White applicant, Lee has met her burden of plausibly alleging a claim for race discrimination. *See id.*

Even under Defendants' proposed analysis, Lee alleges that the circumstances of her rejection support an inference of discrimination. Lee alleges that panelists in her interviews made racist remarks. (ECF No. 4 ¶¶ 30–31.) She further alleges that she nonetheless was selected as one of the final two candidates from whom Suppes would

---

[1] Although Lee maintains that her claims are based on failure-to-promote, rather than failure-to-hire, the distinction is immaterial here because the analysis is identical.

select as the new ED.  (*Id.* ¶ 27.)  Given Donner's comparative lack of relevant qualifications, combined with the panelists' racially motivated skepticism of Lee as a candidate, the facts as alleged by Lee in her Complaint support an inference that race played a factor in the hiring decision, even under Defendants' proposed standard.  *See Drake*, 927 F.2d at 1160; *see also Burdine*, 450 U.S. at 253 ("The burden of establishing a prima facie case of disparate treatment is not onerous.").  Lee has met her burden of plausibly alleging that Defendants' failure to hire her was racially discriminatory.  Defendants' Motion is therefore denied as to Claims 2 and 6.

**B.     Title VII and CADA Retaliation Claims**

Defendants argue that Lee has failed to exhaust administrative remedies with respect to her retaliation claim under the CADA (Claim 7).  (ECF No. 16 at 7.)  Additionally, Defendants argue that Lee fails to state a plausible claim for retaliation under either Title VII or the CADA.  (*Id.* at 8–9.)

   i.     *Failure to Exhaust*

Defendants argue that Lee failed to exhaust administrative remedies as to her CADA retaliation claim because she did not timely file her charge of discrimination with the CCRD.  (*Id.* at 7.)

Prior to bringing a claim under the CADA, a plaintiff must file a charge of discrimination with the CCRD within six months of the adverse employment action.  Colo. Rev. Stat. § 24-34-403.  Whether a plaintiff has exhausted his or her administrative remedies is a question of "jurisdictional fact."  *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002).  Accordingly, failure to exhaust administrative remedies by timely filing a charge of discrimination deprives a court of

subject-matter jurisdiction over the claim.  *See id.*

The basis of Lee's retaliation claim is Lindsay's discharge, which occurred "at the end of July 2019." (ECF No. 4 ¶ 45.) Lee was therefore required to file her charge by no later than late January 2020. *See* Colo. Rev. Stat. § 24-34-403. Defendants attach a letter from the CCRD to their Motion, which states that Lee filed her charge in May 2020, months after the deadline.[2] (ECF No. 16-3.)

In her response, Lee does not dispute that she failed to exhaust administrative remedies under the CADA for her retaliation claim. (*See generally* ECF No. 27.) Rather, her argument focuses exclusively on the proposal of a stay pending the EEOC's issuance of a right-to-sue notice on her Title VII claim. (*Id.* at 8–9.)

Lee may not evade the timely charge requirements by remaining silent in her Complaint and subsequent filings. As Lee does not allege that she timely filed her CCRD charge, nor dispute Defendants' assertions to the contrary, her CADA retaliation claim is barred for failure to exhaust administrative remedies. *See McBride*, 281 F.3d at 1106. Accordingly, Defendants' Motion is granted as to Claim 7, which is dismissed without prejudice.

ii. *Failure to State a Claim*

Defendants argue that Lee fails to state a claim for retaliation under Title VII. (ECF No. 16 at 8–9.) To sustain a retaliation claim, Lee must plead that she (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse

---

[2] When considering factual questions of subject-matter jurisdiction, the Court may consider materials outside of the pleadings. *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003). Hence, the Court may consider the extrinsic materials submitted with the Motion, including the CCRD charge document.

8

employment action. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122–23 (10th Cir. 2007). Defendants assert that Lee fails to state a claim for retaliation because she cannot satisfy the adverse employment action or the causal connection elements of a retaliation claim. (ECF No. 16 at 8–9.)

Lee's retaliation claims are based on Lindsay's termination. (ECF No. 4 ¶¶ 43–48.) Specifically, Lee alleges that Lindsay's discharge was DPS and Suppes's attempt to undermine Lindsay's credibility as a witness in Lee's case. (*Id.* ¶ 45.)

First, Defendants argue that Lindsay's discharge was not an adverse employment action against Lee. (*Id.* at 8.) They posit that a plaintiff may not rely on an adverse employment action against another person unless a close familial relationship between them exists. (ECF No. 16 at 8.) They cite several out-of-circuit district court decisions holding that a co-worker relationship was insufficient to support an associational retaliation claim. (*Id.*) Second, Defendants argue that, even assuming that Lindsay's discharge constituted an adverse employment action, Lee has not pled a causal connection between the events. (*Id.* at 9.)

The Supreme Court has expressly declined to mandate "a fixed class of relationships for which third-party reprisals are unlawful." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 175 (2011). In *Thompson*, the Supreme Court stated that the termination of a close family member would almost always meet the relevant standard and that "inflicting a milder reprisal on a mere acquaintance will almost never do so," but declined to apply a bright line rule. *Id.* The Supreme Court also emphasized that Title VII's antiretaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 174 (quoting *Burlington N. & S.F.R. Co.*

9

*v. White*, 548 U.S. 53 (2006)).  Rather, the relevant inquiry in determining whether an act was retaliatory is whether the employer's action may have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 174 (quoting *Burlington*, 548 U.S. at 68).

The Supreme Court has made it quite clear that no rigid standard precludes a retaliation claim from being based on reprisal against a colleague.  *See Thompson*, 562 U.S. at 175.  Termination of employment is a severe action, and Lee alleges that Lindsay was not only a longtime colleague, but she was someone who also provided key information supporting Lee's discrimination suit.  (ECF No. 4. ¶¶ 34–36.)  The Court finds that the termination of a colleague may well dissuade an employee from filing a charge of discrimination, particularly where, as here, the colleague's termination may undermine the employee's charge of discrimination.  (*Id.*)

Moreover, Lee alleges a causal connection between Lindsay's termination and the filing of Lee's charges, specifically, that DPS learned that Lindsay had disclosed the panel discussions to Lee.  (*Id.* ¶¶ 43–46.)  She also alleges that Donner terminated Lindsay a mere two weeks after Lee filed her charge, further supporting the inference of a causal connection.  (*Id.* ¶ 45.)  Lee has alleged facts which plausibly sustain a retaliation claim under Title VII.  Accordingly, Defendants' Motion is denied as to Claim 3.

## C.   §§ 1981 and 1983 Claims

Defendants seek dismissal of Lee's Equal Protection and § 1981 discrimination and retaliation claims (Claims 1, 4 and 5) against DPS.  (ECF No. 16 at 9.)  They argue that Lee has failed to plead facts giving rise to municipal liability, and therefore cannot

state a claim against DPS. (*Id.* at 9–10.) Defendants further argue that Lee's Equal Protection and § 1981 claims against Suppes (Claims 1 and 4) fail because Lee has not adequately alleged a violation of her rights. (ECF No. 16 at 11.) As a result, they posit, Suppes is entitled to qualified immunity. (*Id.* at 11–13.)

      i.    *DPS Municipal Liability*

Because DPS is a school district, Lee must satisfy the municipal liability principles set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) to hold DPS liable for Suppes and Donner's discriminatory and retaliatory actions. Specifically, Lee must allege that the unlawful actions were taken pursuant to an official policy or custom of DPS, or that Suppes and Donner were final policymakers for DPS. *Randle v. City of Aurora*, 69 F.3d 441, 446 (10th Cir. 1995) (citing *Monell*, 436 U.S. at 690–91). Defendants argue that Lee has not alleged that DPS maintains a custom, policy, or practice of discrimination or retaliation, nor that Suppes or Donner were final policymakers. (ECF No. 16 at 9–11.)

The Tenth Circuit has established three elements for determining whether an individual is a final policymaker: "(1) whether the official is meaningfully constrained 'by policies not of that official's own making;' (2) whether the official's decisions are final— *i.e.*, are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle*, 69 F.3d at 448.

Defendants argue that only the District Superintendent or the District's Board of Education may be final policymakers given the structure of DPS. (ECF No. 16 at 10–11; *see also* ECF No. 16-4 at 1–2.) They attach documents to the Motion detailing the

11

process of delegating authority to the District Superintendent.  (ECF No. 16-4 at 1–2.)  Defendants also cite their official policies against discrimination and retaliation, which they attach to the Motion.  (ECF No. 16-3 at 1–3.)  They contend that these policies "meaningfully constrained" Suppes and Donner.  (ECF No. 16 at 10.)

Lee alleges that Suppes made the decision to hire Donner for the ED position, and that Donner discharged Lindsay.  (ECF No. 4 ¶¶ 37, 45.)  She argues that because Suppes and Donner took these actions despite DPS's anti-discrimination and anti-retaliation policies, they were not "meaningfully constrained" by such policies.  (ECF No. 27 at 13.)  Further, Lee alleges that Suppes and Donner's decisions were final and that no other employee or board reviewed their decisions.  (ECF No. 4 ¶¶ 37, 45.)  No allegations in the Complaint indicate that Suppes or Donner's decisions were not in the realm of their authority.

Resolution of the extent of Suppes and Donner's authority, as Defendants urge, would require the Court to take judicial notice of extrinsic official documents and make factual determinations based on such materials.  Such an inquiry would be inappropriate at the pleading stage of this action in the context of a Rule 12(b)(6) motion.  *See Kearney v. Dimanna*, 195 F. App'x 717, 721 n.2 (10th Cir. 2006) (stating that it is "well-established" that a district court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint" in deciding a motion to dismiss).  Lee plausibly asserts facts supporting liability of DPS based on Suppes and Donner's discriminatory actions as alleged final policymakers.  Defendants' Motion is therefore denied with respect to Claims 1, 4 and 5 against DPS.

> ii. *Qualified Immunity*

Defendants assert that Suppes is entitled to qualified immunity as to Lee's Equal Protection and § 1981 claims for race discrimination (Claims 1 and 4). (ECF No. 16 at 11–13.) To overcome a defendant's assertion of qualified immunity, a plaintiff must show that (1) the defendant violated the plaintiff's federal constitutional or statutory rights, and (2) the right was clearly established at the time of the violation. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Defendants effectively concede that Lee's rights at issue here were clearly established, and focus their argument on Lee's failure to allege constitutional or statutory violations. (ECF No. 16 at 12–13.)

A court analyzes discrimination claims brought pursuant to §§ 1981 and 1983 using the same framework as applied to Title VII claims. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). Therefore, "in racial discrimination suits, the elements of a plaintiff's case are the same . . . whether that case is brought under §§ 1981 or 1983 or Title VII." *Drake*, 927 F.2d at 1162. Lee therefore must allege that "she applied for and was qualified for an available position, that she was rejected, and that after she was rejected [the employer] either continued to seek applicants for the position, or . . . filled the position with a white employee." *Patterson v. McLean Credit Union*, 491 U.S. 164, 186–87 (1989).

As discussed above, Lee has sufficiently alleged a claim for disparate treatment in violation of Title VII based on DPS and Suppes's failure to hire her. Therefore, she has satisfied the second prong of plausibly alleging violations of § 1981 and the Fourteenth Amendment.

Defendants do not specifically address whether the alleged conduct violates clearly established law. (*See generally* ECF No. 16.) Notwithstanding the extensive Supreme Court case law and statutory provisions prohibiting race discrimination, however, the Tenth Circuit has held that the right to be free of such discrimination in employment is clearly established. *See, e.g.*, *Dasgupta v. Harris*, 407 F. App'x 325, 331 (10th Cir. 2011) (finding that law was clearly established that racial discrimination in the workplace was unlawful).

Lee alleges that Suppes deliberately discriminated against her based on her race by hiring a substantially less qualified White applicant. (ECF No. 4 ¶¶ 49–57, 80–91.) If Suppes refused to hire Lee due to her race, as Lee alleges, such conduct would undisputedly violate clearly established rights. *See Dasgupta*, 407 F. App'x at 331. Accordingly, Lee has alleged sufficient facts to overcome Suppes's assertion of qualified immunity. Defendants' Motion is denied as to Claims 1 and 4 against Suppes.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion (ECF No. 16) is GRANTED IN PART;
2. Lee's CADA retaliation claim (Claim 7) is DISMISSED WITHOUT PREJUDICE;
3. Defendants' Motion is otherwise DENIED; and
4. The parties shall proceed with pretrial discovery and related matters in conformity with the provisions of the September 10, 2020 Scheduling Order entered by Magistrate Judge Michael E. Hegarty, as modified by the January 21, 2021 Amended Discovery Deadlines (ECF Nos. 31 & 42).

Dated this 29th day of March, 2021.

BY THE COURT:

_____
William J. Martínez
United States District Judge